IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WELTON ENTERPRISES, INC., WELTON
FAMILY LIMITED PARTNERSHIPS and 3PP
PLUS LIMITED PARTNERSHIP,

|  |  |  |
|---|---|---|
| | Plaintiffs, | OPINION AND ORDER |
| v. | | |
| | | 13-cv-227-wmc |
| THE CINCINNATI INSURANCE COMPANY, | | |
| | Defendant. | |

A jury trial will be held in this case on September 28, 2015. In advance of today's final pretrial conference, the court issues the following written decision with regard to the parties' respective motions in limine.

## I.  Plaintiffs' Motions in Limine

As an initial matter, Cincinnati Insurance invites for the court to decline to consider any of Welton's motions in limine on the merits consistent with Federal Rule of Civil Procedure 7(b)(1), given that each motion is in the form of a single declaratory statement, which seeks to exclude evidence related to a broad "issue." As defendants point out, Federal Rule of Civil Procedure 7(b)(1) unequivocally requires a motion made in writing to "state with particularity the grounds for seeking [an] order." Welton does not support any of its eight, one-line motions with argument or explanation, let alone citation to legal authority. Accordingly, it is well within the court's discretion to deny

each of Welton's motions in limine for failing to comply with the mandatory provisions of Rule 7(b)(1).

Nonetheless, the court will address Welton's motions (each of which is quoted in block below in its entirety). As an initial matter, the fact that Cincinnati Insurance endeavored to respond to them suggests that they were sufficient to provide *some* notice of the bases for Welton's requests. *See Elustra v. Mineo*, 595 F.3d 699, 708 (7th Cir. 2010) (stating that "the purpose of Rule 7 is to provide notice to the court and the opposing party"). Moreover, Cincinnati Insurance's responses satisfy the court that the broad "issues" Welton identifies are not appropriate for the blanket exclusions it seeks. Finally, addressing these issues in advance may contribute to the efficient progress of trial.

**A.** **Evidence or testimony suggesting that damage to the roofs or heating, ventilating or air conditioning systems is not covered ((dkt. #122 )¶ 1); and**

**B.** **Evidence or testimony suggesting that Cincinnati Insurance Company does not have to pay for cosmetic damage ((dkt. #122 )¶ 2).**

Consistent with the Seventh Circuit's decision in *Advance Cable Company v. Cincinnati Insurance Company*, 788 F.3d 743 (7th Cir. 2015), the court had already held that the "direct physical loss" policy language provides coverage for the hail damage at issue, whether the damage is structural or purely cosmetic. (Op. & Order (dkt. #154) 12.) Thus, to the extent Welton's first and second motions seek to preclude Cincinnati Insurance from rearguing that the hail damage does not fall within the ambit of the "direct physical loss" policy language, the court will certainly exclude such argument.

2

Perhaps applying a different interpretation of the word "covered" in Welton's first motion, Cincinnati Insurance raises concern that the evidence Welton seeks to exclude is necessary to support its position that Cincinnati Insurance is not required to *pay* for the damage.  (*See* Def.'s Opp'n (dkt. #149) 7) ("[T]he jury must decide whether [Welton's] non-cooperation eliminates coverage for these damages and whether the alleged hail denting to the subject roofs and HVAC equipment occurred during the relevant policy period.").[1]  This concern is well founded.  Because Welton provides no guidance as to what its motion contemplates by excluding evidence that the hail damage is not "covered," Welton's first motion in limine is DENIED.  While Cincinnati Insurance may *not* argue that the hail damage at issue in this case does not constitute a "direct physical loss," it may present evidence that it is not otherwise legally obligated to pay under the policy, whether because Welton suffered the damage outside the covered period, fialed to cooperate in the investigation, or other factual basis supported by the policy language -- provided of course that such basis was timely disclosed.  Accordingly, Welton's second motion seeking to exclude evidence that Cincinnati Insurance "does not have to pay" for the hail damage under the policy is also DENIED.

### C.    Evidence or testimony regarding sale of any of the buildings at issue in this case ((dkt. #122) ¶ 3); and

---

[1] To demonstrate that there is a triable issue as to whether the alleged damage took place during the period the policy was active, Cincinnati Insurance references a concession made by Welton's HVAC expert during his deposition that his report included repair or replacement costs for units that were manufactured after the April 2011 storm.  (Def.'s Opp'n (dkt. #149) 7.)

**D.**    **Evidence or testimony of any repairs to the roofs or heating, ventilating or air conditioning systems at issue in this case ((dkt. #122) ¶ 4)**

Cincinnati Insurance asserts that evidence related to Welton's third and fourth motions is relevant to its defense that the April 2011 storm may not have caused the hail damage.   Cincinnati Insurance does not describe in detail what evidence regarding building sales or repairs it intends to introduce in support of that defense, but then as previously discussed Welton's motions are greviously (arguably fatally) deficient in this regard as well.   Since Welton fails to state what or why evidence regarding building sales or repairs should be excluded, Welton's third and fourth motions are DENIED.

**E.**    **Evidence or testimony of the amount of money related to damage to the roofs or heating, ventilating or air conditioning systems at issue in this case other than replacement cost ((dkt. #122) ¶ 5).**

Cincinnati Insurance argues that both "replacement cost" and "actual cash value"[2] of the damaged roofs and HVAC units may be at issue because: (1) Welton's own expert states that the damaged HVAC units may only need limited repairs, rather than replacement; and (2) the policy requires Welton to actually replace the roofs in order to recover replacement value.   (*See* Def.'s opp'n (dkt. #149) 8.)   Again, Welton's motion has not demonstrated that the replacement cost is the only measure of damages provided by the policy that is applicable to this case.   Indeed, as with Welton's other matters in

---

[2] The policy defines "Actual Cash Value" as "replacement cost less a deduction that reflects depreciation, age, condition and obsolescence."   (Aff. of Bruce P. Graham, Ex. A (dkt. #98-1) 3.)

limine, it contains nothing but as assertion. Accordingly, Welton's fifth motion is DENIED.

**F.      Any evidence or testimony of communications between individuals at Welton and individuals at Target regarding the claims at issue in this case ((dkt. #122) ¶ 6).**

In its sixth motion in limine, Welton seeks to exclude all evidence of communications between Welton and Target Construction, which provided Welton with repair cost estimates for the damaged roofs and HVAC units. Cincinnati Insurance asserts that these communications are relevant to its non-cooperation defense, as well as to show Target Construction and Welton's bias. Therefore, Welton's sixth motion is DENIED, without prejudice to Welton raising appropriate objections to specific communications at the final pretrial conference or, failing that, when appropriate during trial.

**G.      Any evidence or testimony from Kevin Welton other than his dealings with the claim for damages to the roofs or heating ventilating and air conditioning systems at issue in this case ((dkt. #122) ¶ 7); and**

**H.      Any evidence or testimony from Joanna Burish other than her dealings with the claim for damage to the roofs or heating, ventilating and air conditioning systems at issue in this case ((dkt. #122) ¶ 8).**

With respect to Welton's seventh and eighth motions, Cincinnati Insurance argues that Kevin Welton's and Joanna Burish's testimony concerning other details about their jobs could be relevant to its non-cooperation defense and may aid the jury in

assessing the credibility of other witnesses.  Given the breadth of and lack of explanation for Welton's seventh and eighth motions, both are DENIED.

## II.   Defendant's Motions in Limine

### A.   Exclude expert testimony of plaintiffs' experts Ken Brayton and Jhon Linares (dkt. #125).

Turning to Cincinnati Insurance's motions in limine, it first moves to preclude Welton's expert witnesses Ken Brayton and Jhon Linares from testifying about their repair cost estimates for the roofs and HVAC units.  Welton named Brayton and Linares, both of whom worked for Target Construction, as expert witnesses on roofing and HVAC issues under Federal Rule of Civil Procedure 26(a)(2)(C).  Consistent with that decision, Welton also chose not to disclose a written report from either expert by the court imposed deadline for retained expert witness.  Cincinnati Insurance argues that, pursuant to Rule 37(c)(1), the court should not permit Brayton and Linares to testify about the estimated replacement costs of the roofs and HVAC units because they should be considered Rule 26(a)(2)(B) experts who were required to submit a written report. Alternatively, Cincinnati Insurance argues that even if Brayton and Linares are properly regarded as Rule 26(a)(2)(C) expert witnesses, Welton's disclosures were insufficient to satisfy the requirements of that provision of Rule 26.

Among other things, Rule 26(a)(2)(B) requires a party to provide a timely, detailed written report "if the witness is one retained or specially employed to provide expert testimony[.]"  For expert witnesses who are not required to provide a written

report, a party must disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). One of the principal purposes of Rule 26(a) is for parties to "disclose information regarding expert testimony sufficiently in advance of trial [such] that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26, advisory committee's note to 1993 amendment.

Welton listed Brayton and Linares as Rule 26(a)(2)(C) expert witnesses on September 26, 2014, which was plaintiffs' deadline for expert disclosures. In an effort to satisfy the disclosure obligations under Rule 26(a)(2)(C), Welton stated that each expert "will testify regarding his education, training, and experience in the roofing and construction industry, and his firsthand observations and opinions with respect to the nature, extent, and repairs necessary to remedy the hail damage to the property at issue in this case." (Pl.'s Disclosure of Expert Witnesses (dkt. #65) 2-3.)

Also on its deadline for expert disclosures, Welton named John Riley and Brian Hoffman as two Rule 26(a)(2)(B) expert witnesses and submitted reports prepared by each expert. Both experts' reports contain estimates for the cost to replace the damaged roofs and HVAC structures. (*See* John Riley Report (dkt. #65-2); Brian Hoffman Report (dkt. #65-3).) On their part, Brayton and Linares also prepared a written description of their cost estimates to repair the roofs and HVAC units. (*See* Decl. of Mark W. Rattan Exs. F-X (dkt. ##127-94-112).)

For context, Cincinnati Insurance points out the estimated cost to replace the subject roofs calculated by Brayton and Linares is around $6.2 million more than Riley's estimate and almost $200,000 more than Hoffman's.  (*See* Def.'s Br. (dkt. #126) 2.) Cincinnati Insurance also points to several facts of record suggesting that Brayton and Linares should be considered retained experts under Rule 26(a)(2)(B), who were required to disclose a written report on or before Welton's deadline.   Among the evidence to which Cincinnati Insurance cites is:

(1) Brayton's deposition testimony affirming that Welton "retained" him to be an expert and to provide expert testimony, if needed, in the possible litigation against Cincinnati Insurance (*see* Dep. of Kenneth Brayton (dkt. #128) 217-18);

(2) Brayton's deposition testimony confirming that, in exchange for receiving a contract to do the repair work if Welton received a favorable insurance recovery, Target Construction agreed in writing to pay for Welton's litigation costs and fees (*See id.* at 183-84; Decl. of Mark Rattan, Ex. D (dkt. 127-4));

(3) Welton's CEO Joanna Burish's email in which she wrote, "I will not argue with this report with Cincinnati directly as I will hire Ken Brayton of Target Construction to do that on behalf of Welton" (Dep. of Joanna Burish, Ex. 34 (dkt. 97-8) 2); and

(4) Brayton's confirmation in an email to Burish that Target Construction was providing a written opinion containing repair cost estimates (*see* Dep. of Joanna Burish Ex. 39 (dkt. #97-11) 1).

(*see* Def.'s Br. (dkt. #126) 4-6).[3]

In response to Cincinnati Insurance's motion, Welton argues that Brayton and Linares should be considered Rule 26(a)(2)(B) experts, but as with its own motions in limine, merely offers two conclusory statements in support without citation to any legal authority or factual support.  First, Welton asserts that the agreements providing for Brayton and Linares to complete the repairs in the event that Welton succeeded on its insurance claim do not constitute compensation because "Brayton and Linares merely provided estimates for the work[.]"  (Pl.'s Opp'n (dkt. #152) 2.)  Second, Welton states that "Brayton and Linares were not acquired in preparation for trial, but rather are actors or viewers with respect to transactions or occurrences that are part of the subject matter of this lawsuit."  (*Id.*)

The court finds Welton's assertions not only unpersuasive, but so wholly lacking in support that they have been waived.  Specifically, Welton has not demonstrated that its arrangement with Brayton and Linares was more akin to that of a physician treating a patient than an expert specially retained to provide expert testimony for a litigant.  *See* Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment (stating that "[f]requent examples of [Rule 26(a)(2)(C) witnesses] include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony."); *see also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 n.3 (7th Cir. 2004) (noting that "some district courts have suggested that if the Rule 26(a)(2)[(C)]

---

[3] While this evidence is directed toward Brayton, there appears no dispute that it applies equally to Linares as an employee of Target Construction.

testimony exceeds the scope of treatment and ventures into more general expert opinion testimony, a report may be necessary."). On the contrary, the statements already made under oath by Brayton and Welton's CEO Burish strongly suggest that Welton retained or specially employed Brayton and Linares to provide expert testimony in this case. Even leaving aside the troubling ethical implications of their arrangement,[4] the agreement by which Target Construction contracted to pay Welton's litigation fees and costs in exchange for the opportunity to perform the repair work generally supports the inference that Brayton and Linares are experts retained or specially employed to provide expert testimony.[5] Accordingly, Welton failed to comply with Rule 26(a) by disclosing an expert report prepared by Brayton and Linares by its deadline for expert disclosures.

---

[4] Contrary to the customary practice by which expert witnesses are paid for their services on an hourly basis, there appears to be no dispute that Brayton and Linares stood to benefit directly if Welton *prevailed* in its lawsuit against Cincinnati Insurance. While the Seventh Circuit has held that evidence offered by an expert witness working on a contingent-fee basis is not necessarily inadmissible, *see Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988), counsel practicing in Wisconsin and many other states should be careful to consider the rules of professional conduct when hiring experts. *See* Wis. SCR 20:3.4 ABA Comment [3] ("[I]t is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common-law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee."). Additionally, while prohibitions against champerty have been "abrogated or diluted in many states, including Wisconsin," *Carhart v. Carhart-Halaska International, LLC*, 788 F.3d 687, 691 (7th Cir. 2015), experts should avoid obtaining a financial stake in a case such that their credibility is weakened on account of an obvious conflict of interest. *See Tagatz*, 861 F.2d at 1042.

[5] Arguably at least, the arrangement between Welton and Target makes the latter the principle party at interest. Since Target is after all apparently financing and principally benefitting from a favorable outcome, making its employees, Brayton and Linares, closer to unretained experts under Rule 26(a)(2)(B) unless their principle responsibility is providing expert testimony.

The Seventh Circuit has established that "[t]he sanction for failing to comply with Rule 26(a)(2)[] is 'automatic and mandatory' exclusion from trial of the non-disclosed evidence under [Rule] 37(c)(1) 'unless non-disclosure was justified or harmless.'" *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005) (citing *Musser*, 356 F.3d at 758).  In exercising its broad discretion in determining whether a violation of Rule 26(a) is harmless, a district court considers four factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.  *David v. Caterpillar*, 324 F.3d 857, 857 (7th Cir. 2008).  Since Welton makes *no* argument that its failure to disclose was justified,[6] the court will address the factors for evaluating whether its violation of Rule 26(a)(B) was harmless.

As for the *first* factor, Cincinnati Insurance *is* prejudiced by Welton's late disclosure of Brayton's and Linares's reports[7] if for no other reason than Cincinnati Insurance lacks sufficient time to consider whether it needed to calibrate its litigation strategy to adequately defend against Brayton and Linares.  *Cf. Musser*, 356 F.3d 757-58

---

[6] In fairness, Welton's current counsel was not substituted for previous counsel until April of 2015.

[7] It is unclear on the record precisely when Cincinnati Insurance became aware of the details of Brayton and Linares's estimates.  Welton represents that it provided Cincinnati Insurance with copies of the estimates before it deposed Brayton and Linares on August 4, 2015 and August 6, 2015, respectively.  (Pl.'s Opp'n (dkt. #152) 3.)  While Cincinnati Insurance avers that Welton submitted them "long after" the disclosure deadline (Br. Supp. Def.'s Mot. (dkt. #126) 2), there is no dispute that Welton did not disclose the estimated costs attributed to Brayton and Linares by the deadline for its expert disclosures.

(listing some of the strategies available to litigants to challenge expert witnesses).  For example, Cincinnati Insurance asserts that its experts concentrated on responding to the expert reports prepared by Riley and Hoffman, which Welton submitted by the deadline, rather than undisclosed estimates of Brayton and Linares.   Admittedly, Cincinnati Insurance took a risk in not deposing Brayton and Linares sooner, but this does not excuse Welton's failure to disclose their true status in this case, nor the failure to disclose their estimate of costs of repairs  until the trial date approached.   However, as much as Cincinnati Insurance took a chance, Welton took a greater one in blatantly failing to comply with Rule 26(a)(2)(B).   Having lost, Welton must accept the consequences. Indeed, in weighing the consequences, the prejudice is far less to Welton, since Welton may still rely on Riley and Hoffman to testify about the estimates presented in their timely-disclosed expert reports.

As for the *second* and *third* factors, Welton now has little ability to cure any prejudice it may have caused Cincinnati Insurance by failing to disclose Brayton's and Linares's estimates earlier.   Likewise, any extension of time for Welton to comply with Rule 26(a) will almost certainly disrupt the trial deadline.   At this stage, the court is not required to amend its deadlines in an effort to cure the prejudice Welton caused, and it will not do so here.  *See Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 741 (7th Cir. 1998) (noting that the "plain wording" of Rules 26 and 37 permitted the district court to adhere to its schedule in affirming the district court's sanction precluding witnesses from testifying).

Finally, as for the *fourth* factor, there is at least some indication in the record that Welton intended to prejudice Cincinnati Insurance by disclosing Brayton's and Linares's estimates after the deadline for expert disclosures.  To begin with, the court has already discussed Welton and Cincinnati Insurance's mutual unwillingness to assign a value to Welton's insurance claim, even before Welton filed its complaint in this case.  (*See* Op. & Order (dkt. #154) 7-9.)  Any benefit of the doubt afforded to Welton is further eroded by Brayton's deposition testimony acknowledging that his estimates were prepared by the deadline for expert disclosures, even if they were not what would become his final estimates.  (*See* Dep. Of Kenneth Brayton (dkt. #128) 210).  Furthermore, given the unusual arrangement between them, Welton naming Brayton and Linares as expert witnesses who were not required to provide a written report under Rule 26(a) suggests that Welton may have done so intentionally, in order to conceal their obvious bias.  Together, these facts at least give rise to an inference that Welton was fully capable to disclose expert reports for these witnesses by the deadline, but deliberately chose not to do so in order to withhold information from Cincinnati Insurance until as late in the case as possible.

To be clear, the court has *not* determined that Welton acted willfully or in bad faith in failing to comply with Rule 26(a).  The court must, however, weigh the facts and circumstances of record before exercising its discretion under Rule 37(c)(1).  In light of the above discussion, the court finds that Welton's failure to comply with Rule 26(a) was not harmless and that the appropriate sanction is to preclude Brayton and Linares from

13

rendering any expert opinions as to the nature, extent and cost to repair or replace the roofs and HVAC units at issue in this case.

Cincinnati Insurance also moves the court to exclude Brayton and Linares from testifying about "forensic electron microscopy" results prepared by a different company, citing to deposition testimony suggesting that Brayton knew nothing about forensic electron microscopy before he had a conversation with a representative from the company who did the work.  (*See* Dep. of Kenneth Brayton (dkt. #128) 236-37.) Because Welton provides no response to this motion, particularly with respect to the testimony being offered for the purpose of the truth of the matter asserted, the court will exclude Brayton and Linares from testifying about forensic electron microscopy results. For the reasons set forth above, Cincinnati Insurance's motion in limine (dkt. #125) is, therefore, GRANTED.

### B.      Preclude the jury from considering punitive damages (dkt. #131).

Cincinnati Insurance acknowledges that this motion would be rendered moot if the court granted it summary judgment on Welton's bad faith claim, which it did after Cincinnati Insurance filed this motion.  (Op. & Order (dkt. #154) 16.)  Welton, however, responds to this motion by contending that the facts of this case and *Advance Cable* are not "nearly identical" because Cincinnati conducted a more thorough investigation in *Advance Cable*.

Given the court's finding on summary judgment that "[e]ven when viewed in the light most favorable to Welton, this record reveals that Cincinnati Insurance took

reasonable steps in evaluating its claim" (*id.*), or at least that Welton failed to come forward with sufficient evidence for a reasonable jury to find that Cincinnati Insurance acted with the requisite intent to obtain punitive damages (*see id.*), this motion is GRANTED.   *See* Wis. Stat. § 895.043 ("The plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff.").

**C.     Exclude the expert report and testimony of expert Peter Kochenburger (dkt. #134).**

In response to this motion, Welton only asserts that Kochenburger's report establishes the elements of its bad faith claim.   Since the court granted Cincinnati Insurance's motion for summary judgment on the bad faith claim, this motion is also GRANTED.

**D.     Exclude hearsay testimony of expert Scott Martin (dkt. #135).**

Cincinnati Insurance moves to exclude three statements allegedly made during a conversation between Scott Martin, one of Welton's experts, and Gregory Phillips, one of Cincinnati Insurance's experts, on hearsay and relevance grounds.   According to Cincinnati Insurance, Martin testified during his deposition that Phillips: (1) told him that Welton did not need to hire Target Construction to assist in making its hail damage claims because Cincinnati Insurance would pay for "a number of those buildings;" (2) said that Brayton was a "crook;" and (3) made other statements "bashing" Brayton.   (*See* Def.'s Mot. (dkt. #135) 2.)

Welton's response is wholly inadequate.  First, Welton argues that Federal Rule of Evidence 801(d)(1) "clearly states that a declarant-witness's prior statements are not hearsay," but it does not explain how this exception would apply to the (unsworn, out of court) statements Phillips allegedly made to Martin.  (Pl.'s Opp'n (dkt. #148) 2.)  Second, Welton argues that Federal Rule of Evidence 801(d)(2) "establishes that an opposing party's statement is not hearsay" but does not cite to any authority or anything in the record supporting its questionable assertion that "Phillips was acting as an agent of Defendant when he inspected Welton's roofs," much less that any agent extended to binding Cincinnati Insurance on coverage or Brayton's character.  (*Id.*)  Finally, and most importantly, Welton argues that Phillips' claimed statements are relevant to whether Cincinnati Insurance evaluated Welton's insurance claim in good faith.  In light of the court granting summary judgment to Cincinnati Insurance on Welton's bad faith claim, not only do Phillips's statements appear to be hearsay not subject to any exception, but the statements appear wholly irrelevant to the remaining issues in this case.  Accordingly, this motion is GRANTED.

### E.    General motions in limine (dkt. #136).

Fashioned as three general motions in limine, Welton seeks to preclude: (1) evidence regarding the "cosmetic damages exception;" (2) testimony regarding hail denting claims other than those submitted by Welton; and (3) opinions that roof denting caused the buildings to diminish in value.  Welton does not object to Cincinnati

16

Insurance's second and third general motions in limine, so the court only addresses the first.

In response to Cincinnati Insurance's motion to preclude argument, Welton asserts that evidence regarding the "cosmetic damages exclusion" is relevant to the issue of Cincinnati Insurance's "continued failure to properly investigate the damage to the roofs and their continued refusal to pay the claims at issue in this case." (Pl.'s Opp'n (dkt. #146) 1.) Welton's response, however, underscores that this evidence relates only to the bad faith claim on which the court already granted summary judgment. Accordingly Cincinnati Insurance's general motions in limine is GRANTED.

### F.     Exclude testimony of Jhon Linares regarding Cincinnati Insurance's duties in the event of loss (dkt. #137).

Next, Cincinnati Insurance moves for the court to preclude Linares from testifying in a manner that suggests Cincinnati Insurance had a duty to provide an estimate of damages to Welton.  In support of this motion, Cincinnati Insurance characterizes a portion of Linares's deposition testimony as him suggesting that that "'pretty much every insurance company' allows its insureds to withhold documents until the insurer agrees to a reinspection and/or provides a scope of damages." (Def.'s Mot. (dkt. #137) 3 (citing Dep. of Jhon Linares (dkt. #129) 187-88).)  Cincinnati Insurance also cites to documents and deposition testimony suggesting that Welton believed Cincinnati Insurance should provide its estimates for damages before Welton submitted its estimates.  Cincinnati Insurance seeks to exclude this evidence on Federal Rule of Evidence 403 grounds, arguing that it lacks foundation and is misleading.

17

In its ruling on Cincinnati Insurance's motion for summary judgment, the court denied summary judgment as to three of Cincinnati Insurance's defenses, holding that Welton could show that it substantially performed under the terms of the contract. (*See* Op. & Order (dkt. #154) 17-22.)  Though Welton offers no argument in response to Cincinnati Insurance's motion, Linares's testimony and other evidence related to the reasons why Welton waited to submit its estimates may be relevant to counter Cincinnati Insurance's defenses at trial.  Accordingly, while the court will GRANT this motion with respect to Linares offering any legal or expert opinion, it will otherwise RESERVE on this motion.

### G.      Motion for jury view of the roofs (dkt. #138).

Finally, Cincinnati Insurance moves to have the jury view each of the roofs at issue in this case or, in the alternative, a representative sample of the roofs selected by Cincinnati Insurance and Welton.  Cincinnati Insurance contends that the conditions of the roofs cannot be conveyed through photographs and affirms that it will arrange for transportation and lifts to bring jurors to the roof of each building.  Cincinnati Insurance has not, however, adequately demonstrated how the jury will be uniquely aided by viewing the actual roofs in person.  In addition, a jury view of the roofs could potentially be risky and would unquestionably be time consuming.  For these reasons, this motion is DENIED.

Entered this 22nd day of September, 2015.

BY THE COURT:
/s/
William M. Conley
District Judge